**John Joseph ROMANO, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. PC–95–172.**

Court of Criminal Appeals of Oklahoma.

April 29, 1996.

Robert A. Ravitz, Public Defender of Oklahoma County, Wendell B. Sutton, Assistant Public Defender, Oklahoma City, for Appellant on Appeal.

W.A. Drew Edmondson, Attorney General, A. Diane Blalock, Assistant Attorney General, Oklahoma City, for the State on Appeal.

### OPINION DENYING POST–CONVICTION RELIEF

LANE, Judge:

John Joseph Romano is before us on appeal from denial of post-conviction relief in Oklahoma County District Court by the Hon. Virgil C. Black on February 17, 1995. We affirm the denial of post-conviction relief. Appellant has now exhausted his state remedies.

### I. PROCEDURAL HISTORY OF THE CASE

John Joseph Romano was tried by jury and convicted of First Degree Murder for the death of Roger Sarfaty, and Robbery With a Dangerous Weapon After Former Conviction of Two or More Felonies in Okla-

homa County District Court Case No. CRF–87–397. The jury set punishment at death for the murder and one thousand years imprisonment for the robbery. The trial judge sentenced in accordance with the jury recommendation. Judgment and sentence was affirmed. *Romano v. State*, 847 P.2d 368 (Okl. Cr.1992).[1] Rehearing was denied by unpublished order. (F–87–441 March 17, 1993).

Romano appealed to the United States Supreme Court which granted certiorari in part to address a single question:

> Does admission of evidence that a capital defendant already has been sentenced to death in another case impermissibly undermine the sentencing jury's sense of responsibility for determining the appropriateness of the defendant's death, in violation of the Eighth and Fourteenth Amendments?

*Romano v. Oklahoma*, 510 U.S. 943, 114 S.Ct. 380, 126 L.Ed.2d 330 (1993).

The high court resolved the issue finding no violation of the Eighth and Fourteenth Amendments. *Romano v. Oklahoma*, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994).

Romano then filed an application for post-conviction relief in Oklahoma County District Court which was decided on the pleadings and denied. He is now before us on appeal from this adverse ruling.

## II. ISSUES ADDRESSING THE POST-CONVICTION PROCESS

### A. Denial of Discovery

■ Romano filed an extensive discovery motion pursuant to 22 O.S.Supp.1994, §§ 2002(A)(1)(b) and (2) in conjunction with his application for post-conviction relief which the trial court denied. In Proposition I he urges this Court to remand the matter for "proper" discovery.

The Oklahoma Criminal Discovery Code does not address post-conviction discovery. The continuing duty to disclose evidence under the Code extends only during trial. 22 O.S.Supp.1995, § 2002(C). This Court consistently rejects the argument that a post-conviction applicant is entitled to the production of the state's entire file. *See Smith v. State*, 878 P.2d 375, 379 (Okl.Cr.), *cert. denied*, —— U.S. ——, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994); *Rojem v. State*, 829 P.2d 683, 684 (Okl.Cr.), *cert. denied*, 506 U.S. 958, 113 S.Ct. 420, 121 L.Ed.2d 343 (1992). In *Smith* the Court intimated the result *may* be different if the record supported a finding that discovery prior to and during trial was "not sufficient." *Smith*, 878 P.2d at 379.

As we set forth in more detail in Section III of this opinion, the record does not support the argument that pre-trial discovery was not sufficient. We find the trial court correctly denied the request for post-conviction discovery.

### B. Adjudication on the Pleadings

■ The trial court denied Romano's motion for an evidentiary hearing and decided the application for post-conviction relief on the pleadings. He challenges this procedure on two grounds in Proposition II: (1) lack of jurisdiction; and (2) abuse of discretion, for the pleadings raised genuine issues of material fact which could not be resolved on the pleadings.

Appellant claims a motion by either party is required to confer jurisdiction on the trial court to decide the matter on the pleadings. He bases this argument solely on the language of 22 O.S.1991, § 1083(c) which provides:

> The court may grant a motion by either party for summary disposition of the [post-conviction] application when it appears

---

1. Romano and David Woodruff were tried jointly for the murder of Roger Sarfaty. Prior to this trial they were tried jointly for the murder and robbery of Lloyd Thompson in Oklahoma County District Court Case No. CRF–86–3920. Romano and Woodruff were convicted and sentenced to death. This Court reversed and remanded for new trial. *Romano v. State*, 827 P.2d 1335 (Okl. Cr.1992); *Woodruff v. State*, 825 P.2d 273 (Okl.

Cr.1992). Retrial was held after this Court affirmed judgment and sentence in the Sarfaty case. Upon retrial, Romano was convicted and sentenced to death; Woodruff was convicted and sentenced to life without parole. Judgment and sentence has been affirmed in both cases. *See Romano v. State*, 909 P.2d 92 (Okl.Cr.1995); *Woodruff v. State*, F–94–226 (unpublished opinion Sept. 21, 1995).

from the response and pleadings that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Appellant overlooks § 1083(b) which immediately precedes the cited section. Section 1083(b) grants the trial court the power to adjudicate an application for post-conviction relief on the pleadings when it is satisfied the applicant is not entitled to post-conviction relief. 22 O.S.1991, § 1083(b). Plainly, the court had jurisdiction to decide the matter on the pleadings.

We are not persuaded by the second prong of the argument which asserts the trial judge erred by failing to recognize genuine issues of material fact which could only be resolved after an evidentiary hearing. We disagree, as we explain fully in the next section of this opinion.

## III. NEWLY DISCOVERED EVIDENCE

The Post–Conviction Procedure Act governs post-conviction practice in this state. 22 O.S.1991, § 1080, *et seq.* Post-conviction relief may be based on the discovery of "material facts, not previously presented and heard, that require vacation of the conviction or sentence in the interest of justice." 22 O.S.1991, § 1080(d). These facts must have been undiscoverable for trial or original appeal despite the exercise of due diligence. *Brecheen v. State,* 835 P.2d 117, 121 (Okl. Cr.), *cert. denied,* 506 U.S. 1085, 113 S.Ct. 1063, 122 L.Ed.2d 368 (1993).

Appellant asserts seven grounds for relief based on four facts which he claims are material and newly discovered.[2] These facts are: (1) the temperature in Sarfaty's apart-

ment when his body was discovered was 80 degrees, not 60 degrees as testified to at trial; (2) Sarfaty was burglarized seven weeks prior to his death; (3) the State gave second-stage witness, Greg Myers, a deal for his testimony; and (4) Myers recanted after trial.

### A. The Temperature in Sarfaty's Apartment

Sarfaty's body was found in his apartment by police shortly after midnight, Wednesday, October 16, 1985. The moderate decay of the body together with the estimated temperature of the apartment after the murder led the medical examiner to conclude death had occurred "reasonably around three or four days" before the body was found. On cross-examination counsel established such estimates are inexact. The medical examiner agreed a higher temperature would lead to more rapid decay.

The medical examiner based her conclusion that the apartment temperature was "relatively stable" on two sources of information. At 4:30 a.m., approximately four hours after the body was discovered, the Chief Investigator for the Medical Examiner recorded a 60 degree temperature registering on the apartment thermostat. The medical examiner also obtained high and low temperatures for October 11–16 from the National Weather Service:

| Date | High | Low | |
|------|------|-----|---|
| Oct. 11 | 69 | 47 | rain |
| Oct. 12 | 82 | 64 | clear |
| Oct. 13 | 79 | 65 | rain |
| Oct. 14 | 69 | 51 | rain |
| Oct. 15 | 68 | 47 | no testimony |
| Oct. 16 | 71 | 46 | no testimony |

2. Proposition III asserts newly discovered evidence concerning the temperature of the deceased's apartment and thus rate of decomposition and time of death requires reversal under the Sixth, Eighth, and Fourteenth Amendments of the federal constitution;
Proposition IV asserts the newly discovered temperature evidence requires reversal under 22 O.S.1991, § 1080(d);
Proposition V asserts failure to disclose allegedly exculpatory evidence;
Proposition VII asserts newly discovered evidence of an undisclosed deal between the State

and Gregg Myers requires reversal under 22 O.S. 1991, § 1080(d);
Proposition VIII asserts newly discovered evidence of an undisclosed deal with Gregg Myers requires reversal under the Eighth Amendment;
Proposition IX asserts newly discovered evidence proves the evidence admitted at trial is insufficient to support conviction;
Proposition X asserts in light of the newly discovered evidence the evidence supporting the continuing threat aggravating circumstance is insufficient.

The asserted new material fact came up in testimony by former homicide detective, Jerry Martin, at Romano's retrial for the Thompson murder. Martin testified in the second stage of trial that the temperature inside Sarfaty's apartment when he arrived at 1:30 a.m. was 80 degrees. As a result of this testimony, post-conviction counsel obtained a thermodynamic analysis and computer simulation of the temperature conditions in Sarfaty's apartment which concluded the temperature was "much higher" than the temperature estimated by the medical examiner.

We examine this evidence first to determine whether it could have been discovered with due diligence prior to trial. Martin testified at the preliminary hearing for the Sarfaty trial, but not at trial. He testified that he arrived at Sarfaty's apartment shortly after 1:30 a.m. Wednesday, October 16, 1985, and stayed for some nine hours. When defense counsel asked him how long he thought Sarfaty had been dead, he replied, "[t]hree or four days." With due diligence counsel could have probed the facts Martin used to arrive at this conclusion.

We next determine whether the failure to discover this evidence rises to ineffective assistance of counsel. If it does, the issue is not waived and will be addressed on appeal. *See Stiles v. State*, 902 P.2d 1104, 1107 (Okl.Cr.1995), *cert. dismissed*, —— U.S. ——, 116 S.Ct. 1257, 134 L.Ed.2d 206 (1996); *Castro v. State*, 880 P.2d 387, 388 (Okl.Cr. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1375, 131 L.Ed.2d 229 (1995). This issue is presented in an unusual way here. In most cases we look to the effectiveness of appellate counsel in post-conviction appeals. However, Romano's appeal in the Sarfaty case had already been decided when Martin testified in the retrial for the Thompson murder. Therefore, we look to the trial level to determine whether ineffectiveness of counsel avoids waiver.

To carry his burden an appellant must show counsel's representation fell below an objective standard of reasonableness and the reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Ashinsky v.*

*State*, 780 P.2d 201, 207 (Okl.Cr.1989); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The potential effect of this evidence on the verdict depends on its probative force.

Any probative force is weakened significantly by Martin's affidavit filed with the State's response to Romano's application for post-conviction relief. Martin states he testified from memory to an event which occurred nine years earlier, and he may well have remembered wrong. It is also weakened by the fact a sixty-degree temperature was recorded from the apartment thermostat at the same time Martin claims he estimated the temperature. Probative force is weakened further by the lack of a conclusion which can be drawn from the evidence, even if Martin's memory were accurate.

At trial the time of death asserted by the prosecution and the defense differed by approximately eight hours. The State believed Sarfaty was killed Saturday afternoon; the defense argued he was killed early Sunday morning. The "new" temperature evidence does not alter this eight hour window in any way. Under these circumstances, there is no likelihood the verdict would have been different had this evidence been presented to the jury. Having found Romano suffered no prejudice, the claim of ineffective assistance fails without further analysis. *See Stiles*, 902 P.2d at 1107. For the same reason, we find no violation of the Sixth, Eighth, or Fourteenth Amendments.

We also find an evidentiary hearing was not necessary to resolve the issue, for all the relevant facts were presented to the trial judge through the pleadings and Martin's affidavit. The trial court correctly decided this issue.

### B. Previous Burglary of Sarfaty's Apartment

Post-conviction counsel argues the prosecutor did not disclose a police report which proves Sarfaty's apartment was burglarized approximately seven weeks prior to the murder. The State replies that its entire file was divulged to the defense prior to trial. The record supports the State. At trial de-

fense counsel cross-examined Detective Sam Sealy and brought out several crimes which had been committed against Sarfaty a number of weeks prior to his murder: (1) assault; (2) burglary; and (3) robbery. Experienced trial counsel expressed no surprise at this evidence. The record makes clear the prior burglary is not newly discovered evidence. There was no need to conduct a post-conviction evidentiary hearing to resolve this issue.

### C. Greg Myers' Deal and Recantation

■ The issue of an alleged deal between the State and Greg Myers was raised at trial. Myers' attorney testified there was no deal. The prosecutor testified there was no deal. The trial judge determined there was no deal. Post-conviction counsel writes in his brief,

> Myers admitted he had no direct deal for his testimony in the Sarfaty trial, but he also mentioned that he had two definite incentives for his testimony.

These incentives are inflated travel reimbursement based on the fact he said he would have to travel from Dallas, when in fact he lived in Oklahoma City, and his belief the District Attorney's Office would cause legal difficulties for him if he did not testify. Appellant does not cite any authority to suggest either of these "incentives" rise to the level of a "deal" which must be disclosed.

Appellant also argues this factual matter must be resolved by evidentiary hearing. We disagree. The matter was set forth fully in the pleadings supporting the application for post-conviction relief. The trial court properly denied the motion for evidentiary hearing.

■ Appellant further argues he was denied a fair trial, for Greg Myers is, by his own admission, a liar and he recanted his testimony. When we examine this issue in trial context, we find Myers testified during the second-stage of trial. Myers testified while he and Romano were incarcerated in the county jail, Romano discussed a *previous* murder with him. Myers testified Romano said he had killed a man and he would pay Myers to kill witnesses in that case. On cross-examination the defense brought out

the fact Romano never identified or named these witnesses and never paid him any money. This minimally relevant testimony about a nonspecific offer to kill witnesses could have had little effect on the jury given the fact the State presented a significant amount of evidence of the prior murder committed by Romano. Myers' testimony that Romano admitted to killing another man has been adjudicated to be true. Romano was convicted of the Thompson murder, and that conviction has been affirmed on appeal. *Romano*, 909 P.2d at 127. There is no Eighth Amendment issue here.

■ In his final challenge concerning Myers' testimony, Appellant raises the significance of the fact Myers recanted his testimony after trial. For the same reasons we find Myers' testimony did not deny him a fair trial, we find the recantation does not undermine the jury's decision to impose the death penalty. Myers' testimony had almost no weight, and the issue it was offered to support—continuing threat—was supported overwhelmingly by other evidence. *See, Romano*, 847 P.2d at 389.

### D. Sufficiency of the Evidence of Guilt

In Proposition IX Appellant argues the newly discovered evidence proves the evidence supporting conviction is insufficient. As fully set forth in Section II of this opinion, we find none of the cited evidence erodes our confidence in the jury's verdict.

### E. Sufficiency of the Evidence of Continuing Threat

In Proposition X Appellant argues that in light of the alleged newly discovered temperature evidence and the Greg Myers' deal, the evidence is not sufficient to support the continuing threat aggravating circumstance. As fully set forth in Section II of this opinion, we disagree. Nothing presented on post-conviction changes our determination on appeal that the evidence of continuing threat was sufficient. *Romano*, 847 P.2d at 394.

### VI. CONSTITUTIONALITY OF DEATH BY LETHAL INJECTION

■ The only issue raised by post-conviction counsel which could have been raised by

appellate counsel, but was not, is Proposition XII, that death by lethal injection is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments and their counterparts in the Oklahoma Constitution. Neither this Court nor the United States Supreme Court has so held, and we are not persuaded to do so now.

## VII. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Appellant argues in Proposition XI that if any of the issues raised in the application for post-conviction relief are deemed waived or barred by *res judicata,* this Court should find he was deprived of effective assistance of appellate counsel. As we have set forth in Section III of this opinion, none of the evidentiary issues raised in the application for post-conviction relief support a finding of ineffective assistance of appellate counsel. Neither does counsel's decision not to challenge the constitutionality of death by lethal injection. The original appeal would not have been strengthened by the addition of this hopeful but legally unsupported argument.

## VIII. CONCLUSION

Finding no grounds to reverse, the order of the trial court denying the application for post-conviction relief is **AFFIRMED.**

CHAPEL, V.P.J., and STRUBHAR, J., concur.

JOHNSON, P.J., and LUMPKIN, J., concur in result.

LUMPKIN, Judge, Concurring in Results.

I concur in the Court's decision to affirm the denial of post-conviction relief. However, it is not necessary to consider the merits of several of the issues raised by Petitioner. Propositions of error Nos. VI, VII, VIII; (the existence of a deal between the State and Greg Myers); X (Sufficiency of the evidence supporting the aggravating circumstances of "continuing threat") and IX (sufficiency of the evidence and supporting the conviction) were raised on direct appeal and are therefore barred from further consider-

ation by *res judicata.* Proposition No. V (that the State withheld exculpatory evidence of a burglary in the victim's apartment seven weeks before the murder) is waived from further consideration as it could have been raised on direct appeal but was not.