2006 OK CR 25

**James Patrick MALICOAT, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. D–1998–151.**

Court of Criminal Appeals of Oklahoma.

June 19, 2006.

---

***ORDER DENYING REQUEST FOR
STAY OF EXECUTION AND SET-
TING EXECUTION DATE***

¶ 1 James Patrick Malicoat was tried by
jury and convicted of First Degree Murder

in violation of 21 O.S.1991, § 701.7(C), in the District Court of Grady County, Case No. CF–97–59. The jury found two aggravating circumstances: (1) that the murder was especially heinous, atrocious or cruel, and (2) the existence of a probability that Malicoat would commit criminal acts of violence constituting a continuing threat to society. In accordance with the jury's recommendation the Honorable Joe Enos sentenced Malicoat to death. He appealed his judgments and sentences to this Court, we affirmed, and the United States Supreme Court denied certiorari.[1] This Court subsequently denied Malicoat's application for post-conviction relief.[2] Malicoat was denied habeas corpus relief in the federal courts.[3] Malicoat has exhausted his appeals in state and federal court. On June 5, 2006, the State of Oklahoma filed an Application for Execution Date with this Court.

¶ 2 Malicoat filed an Objection to Setting of an Execution Date on June 5, 2006.[4] Malicoat claims that Oklahoma's lethal injection protocol violates the Eighth Amendment prohibition against cruel and unusual punishment. He argues that the state's execution procedure creates a substantial risk that he will consciously suffer or experience excruciating pain during the execution process. Malicoat claims that mistakes made during the execution process itself might lead to drug administration failure, causing pain and suffering. He claims that Oklahoma's failure to require specially trained medical personnel heightens the likelihood that such mistakes will be committed. Malicoat also claims that the drugs used in the execution protocol themselves cause pain and suffering

and violate the Eighth Amendment. Malicoat notes that pending litigation in the federal courts challenges Oklahoma's execution protocol, and asks this Court to stay any execution date until that litigation has been resolved.

■ ¶ 3 The State urges this Court to either disregard Malicoat's pleading as improper or apply the doctrine of waiver. This Court has not yet had an opportunity to rule on this issue.[5] We treat Malicoat's substantive claim, that to set an execution date would subject him to cruel and unusual punishment, as a subsequently filed application for capital post-conviction review.[6] If Malicoat's claim is correct, then his legal sentence will be carried out in an illegal manner, substantially violating both the United States and Oklahoma constitutions. This Court has the authority to consider the merits of an issue which may so gravely offend a defendant's constitutional rights and constitute a miscarriage of justice.[7] In the interests of justice, and considering the importance of the principle of finality of sentences, we reach the merits of Malicoat's claim and deny his request to stay his execution date.

¶ 4 In support of his claim, Malicoat offers this Court affidavits from the Warden of the Oklahoma State Penitentiary, and an Assistant Professor of Clinical Anesthesiology in the Department of Anesthesiolgy at Columbia University, New York. He also provides the Court with the Oklahoma Department of Corrections Procedures for Execution, a portion of a 2000 Report on the American Veterinary Medical Association Panel on Euthana-

---

1. *Malicoat v. State*, 2000 OK CR 1, 992 P.2d 383, *cert. denied*, 531 U.S. 888, 121 S.Ct. 208, 148 L.Ed.2d 146 (2000).

2. *Malicoat v. State*, No. PC–1999–1289 (Okl.Cr. Feb. 1, 2000). Malicoat did not file a petition for writ of certiorari challenging this opinion in the United States Supreme Court.

3. *Malicoat v. Mullin*, 426 F.3d 1241 (10th Cir. 2005). Certiorari review was denied. *Malicoat v. Sirmons*, No. 05–10143, —— U.S. ——, 126 S.Ct. 2356 (June 5, 2006).

4. The State filed a Response on June 9, 2006. Malicoat filed a Reply to the State's Response on June 9, 2005.

5. We have found that lethal injection is not cruel and unusual punishment, but have not specifically discussed Oklahoma's particular method of execution. *Jones v. State*, 2006 OK CR 5, 128 P.3d 521, 551; *Romano v. State*, 1996 OK CR 20, 917 P.2d 12, 18. In *Murphy v. State*, 2005 OK CR 25, 124 P.3d 1198, 1209, we found that Murphy had waived a similar claim for capital post-conviction purposes by failing to raise it in any previous pleading.

6. 22 O.S.2001, § 1089(8). By statute, this Court has original jurisdiction over capital appellate filings after the direct appeal has ended.

7. 20 O.S.2001, § 3001.1; *Valdez v. State*, 2002 OK CR 20, 46 P.3d 703, 710–11.

sia and a newspaper article describing the recent execution of another Oklahoma capital prisoner. We have considered these documents in reaching our conclusion.

¶ 5 Oklahoma's execution protocol, requiring lethal injection, is established by statute: "The punishment of death must be inflicted by continuous, intravenous administration of a lethal quantity of an ultrashort-acting barbiturate in combination with a chemical paralytic agent until death is pronounced by a licensed physician according to accepted standards of medical practice." [8] The specific method of execution is determined by Department of Corrections. The Department of Corrections developed the method of execution currently in use after consultation with medical professionals in the Oklahoma Medical Examiner's Office and the Department of Corrections Pharmacy, and after reviewing procedures used in other states. [9] The process is described in Exhibit A to Malicoat's Objection, an Affidavit by Warden Mullin. Since 2003, the Department of Corrections has administered sodium thiopental, vecuronium bromide, and potassium chloride in the execution process. [10] All personnel involved in the execution process have had extensive training and experience in the execution procedures. [11] Throughout the execution, a licensed physician is present in the execution chamber to monitor the defendant. [12] A licensed phlebotomist inserts an intravenous line into each arm of the defendant. [13] Using both lines, the defendant is first given an ultra-short acting barbiturate, sodium thiopental, which renders the inmate unconscious. This is followed by vecuronium bromide and potassium chloride, administered as quickly as possible after the barbiturate, alternating in each arm. [14] During the process, another dose of sodium thiopental is administered. [15] Immediately after each drug is administered, that line is flushed with saline before the next dosage is given. [16] The drugs for each execution are compounded by a licensed pharmacist for the Department of Corrections. [17] The purpose behind the regimen of drug administration is to ensure that the barbiturate, sodium thiopental, renders the defendant unconscious as the other drugs are administered.

¶ 6 Malicoat fails to show that this protocol is facially unconstitutional. The Eighth Amendment prohibits cruel and unusual punishment. [18] Whether a punishment is considered cruel and unusual is viewed through "the evolving standards of decency that mark the progress of a maturing society." [19] We look at whether the punishment at issue is proportionate to the offense, offends contemporary standards of decency, and has legitimate punishment objectives. [20]

8. 22 O.S.2001, § 1014; Oklahoma Department of Corrections Procedures for the Execution of Inmates Sentenced to Death VII(B), OP–040301, Effective Date 4/8/05 (Exhibit C).

9. Affidavit of Warden Mike Mullin, ¶ 5 (Exhibit A).

10. Affidavit of Warden Mike Mullin, ¶ 8 (Exhibit A).

11. Affidavit of Warden Mike Mullin, ¶ 19 (Exhibit A).

12. Affidavit of Warden Mike Mullin, ¶ 11 (Exhibit A). Malicoat claims that under the Oklahoma process nobody assures that the defendant is unconscious before the vecuronium bromide and potassium chloride are administered. [Appellant's Response at 2] This assertion is unsupported by any materials before this Court, and appears to be contradicted by the presence of the monitoring physician.

13. Affidavit of Warden Mike Mullin, ¶¶ 6, 12 (Exhibit A).

14. Affidavit of Warden Mike Mullin, ¶ 13, 15 (Exhibit A).

15. Affidavit of Warden Mike Mullin, ¶ 13, 15 (Exhibit A). A total of 2400 milligrams, or 2.4 grams, of sodium thiopental is administered throughout the procedure. Malicoat mistakenly claims in his reply brief that only 1200 milligrams are used.

16. Affidavit of Warden Mike Mullin, ¶ 20 (Exhibit A).

17. Affidavit of Warden Mike Mullin, ¶ 17 (Exhibit A).

18. U.S. Const. amend. VIII.

19. *Roper v. Simmons,* 543 U.S. 551, 561, 125 S.Ct. 1183, 1190, 161 L.Ed.2d 1 (2005).

20. *Roper,* 543 U.S. at 561, 125 S.Ct. at 1190; *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002); *Gregg v. Georgia,* 428

Punishment is cruel and unusual when it involves the unnecessary and wanton infliction of pain.[21] Malicoat provides this Court with an affidavit from an anesthesiologist who has studied the execution process, explaining the way in which the drugs interact. Dr. Heath relied on Warden Mullin's Affidavit describing Oklahoma's procedure in preparing his own analysis. The vecuronium bromide, administered immediately after the barbiturate, paralyzes the muscles. The potassium chloride spreads throughout the body and stops the heart. If the defendant is not unconscious when the last two drugs are administered, he will experience extreme burning pain but be unable to indicate this because his muscles will be paralyzed.[22] Dr. Heath avers that the barbiturate used by Oklahoma, when properly administered, will work effectively, rendering a defendant unconscious "for a considerable period of time."[23] Neither his affidavit nor any other material presented by Malicoat suggest that the protocol, as set forth in the Department of Corrections Procedures and Warden Mullin's Affidavit, is anything but humane and effective. Oklahoma and at least thirty-three other capital punishment states have mandated lethal injection as the primary means of execution, suggesting that it comports with contemporary standards of decency.[24] We have in the past held that lethal injection *per se* is not unconstitutional.[25] We must conclude that Oklahoma's execution protocol is constitutional on its face.

¶ 7 Malicoat argues that the protocol is unconstitutional because mistakes may be made in its application, and if mistakes are made during his execution, he will suffer a cruel and unusual death contrary to the Eighth Amendment. Dr. Heath's Affidavit lists fourteen potential areas in which mistakes may be made in the preparation or administration of the drugs.[26] Many of these involve human error, including failure to properly mix the drugs, mislabeling, errors in insertion of equipment, and errors in administering the drugs. Some involve mechanical or equipment failure. Some potential mistakes on the list involve equipment which may or may not be used in Oklahoma executions. As Judge Cochran of the Texas Court of Criminal Appeals has said, regarding a similar affidavit Dr. Heath prepared in a case for that Court,

> All of these are potential problems during the lethal injection protocol, just as they are potential problems during any surgical procedure. As a society, however, we do not ban surgery because of these potential problems. We take appropriate precautions and rely upon adequate training, skill, and care in doing the job.[27]

U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976).

21. *Gregg*, 428 U.S. at 173, 96 S.Ct. at 2925.

22. Affidavit of Dr. Mark Heath, ¶ 5 (Exhibit D).

23. Affidavit of Dr. Mark Heath, ¶ 6 (Exhibit D). He also states, "The successful administration of a large dose of pentothal causes the rapid onset of deep unconsciousness." Affidavit, ¶ 12. Dr. Heath does not state the amount of sodium thiopental he considers sufficient to cause rapid unconsciousness in the affidavit before the Court. Dr. Heath testified before a Tennessee court that two grams would cause unconsciousness, and five grams would almost certainly be fatal. *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 303 (Tenn.2005). In a similar affidavit admitted in a case before the Texas Court of Criminal Appeals, Dr. Heath declared that five grams of sodium thiopental is a massive, potentially lethal dose. *Ex Parte Aguilar*, 2006 WL 1412666, *3 (Tex. Crim.App. May 22, 2006) (Cochran, J., concurring) (not for publication). *Aguilar* was presented as a habeas petition. Reviewing under the Texas standard for habeas corpus petitions, the

full Texas Court concluded without discussion that Aguilar had failed to make a *prima facie* showing that the lethal injection process was unconstitutional. The Texas Department of Criminal Justice considers three grams of sodium thiopental to be a lethal dosage. *Ex parte O'Brien*, 190 S.W.3d 677, 2006 WL 1358983 (Tex.Crim.App.2006) (per curiam opinion dismissing habeas corpus claim) (Cochran, J., concurring).

24. The Tennessee and Connecticut Supreme Courts have noted that lethal injection is thought to be the most humane form of execution. *Abdur'Rahman*, 181 S.W.3d at 306; *State v. Webb*, 252 Conn. 128, 750 A.2d 448, 457 (2000).

25. *Jones*, 2006 OK CR 5, 128 P.3d at 551; *Romano*, 1996 OK CR 20, 917 P.2d at 18.

26. Affidavit of Dr. Mark Heath, ¶ 8, (a-n) (Exhibit D)..

27. *Ex Parte Aguilar*, 2006 WL 1412666, *3 (Tex. Crim.App. May 22, 2006) (Cochran, J., concurring) (not for publication) (not for publication).

The State of Oklahoma has developed a particular execution protocol, requiring trained personnel including a licensed physician and licensed medical personnel. The Department of Corrections provides training in the execution process for all persons involved in carrying out the procedures. We agree with the Supreme Court of Connecticut that an execution process "cannot foreclose the possibility of human error, that always accompanies any human endeavor, " and that the "risk of accident cannot and need not be eliminated from the execution process in order to survive constitutional review." [28]

¶ 8 Malicoat claims that Oklahoma compounds the possibility of mistakes by allowing insufficiently licensed or trained persons to carry out executions. He argues that these mistakes could be avoided if Oklahoma required executions to be carried out by persons with special medical training. Dr. Heath suggests that appropriately trained persons include nurses, emergency medical technicians, physicians, dentists, veterinarians, and physician's assistants.[29] Oklahoma requires a licensed physician to be present at each execution and a licensed phlebotomist inserts the IV tubes. Malicoat claims that a licensed phlebotomist is not qualified to administer and manage intravenous fluids and drugs. Without expressing an opinion on this claim we note that the protocol provides that a physician is present, monitoring the execution, and thus each step of the process (including insertion of IV tubes and administration of the fluids) must be performed to the physician's satisfaction. Dr. Heath avers that the risk of mistake is compounded because the Oklahoma Department of Corrections has not published the qualification requirements or training procedures for personnel, including medical personnel, involved in executions.[30] Malicoat thus asks this Court to join Dr. Heath in speculating that, because these training procedures are not part of a public record or submitted to the Court in this case, the execution personnel must be inadequately trained or incompetent. We decline to so speculate.

¶ 9 Malicoat provides anectodal evidence, in the form of a newspaper article and Dr. Heath's Affidavit, that defendants may not have been unconscious in previous recent executions. Dr. Heath describes several eyewitness accounts of executions in which the defendant's body continued to move or convulse after sodium thiopental was injected. In his opinion, these accounts are "inconsistent with the successful administration of a large dose of pentothal." [31] There is no way for this Court to determine, years after those executions, whether eyewitness reports of movement were accurate or signified anything with regard to those defendants' conscious or unconscious state. This Court similarly cannot determine whether mistakes may be made in future executions. Once again, this Court will not speculate on whether mistakes may have been made in past executions. The question before us is whether Oklahoma's execution protocol is constitutional, and we have found that it is.

¶ 10 This Court does not intend to denigrate Malicoat's anecdotal examples of potential problems with executions in Oklahoma. We have previously noted that some eyewitness accounts of irregularities in past executions may create cause for concern.[32] We again express our confidence that the Department of Corrections will continue to monitor and revise the execution protocol as may be necessary to ensure a swift, painless and humane execution. However, these expressions of concern and confidence regarding the process do not undermine our legal

**28.** *State v. Webb*, 252 Conn. 128, 750 A.2d 448, 456–57 (2000), quoting *Campbell v. Wood*, 18 F.3d 662, 681 (9th Cir.1994) (ruling Washington state's method of execution, hanging, was constitutional).

**29.** Affidavit of Dr. Mark Heath, ¶ 9 (Exhibit D).

**30.** Affidavit of Dr. Mark Heath, ¶¶ 10, 11 (Exhibit D).

**31.** Affidavit of Dr. Mark Heath, ¶¶ 12 (Exhibit D). Dr. Heath also suggests that post-execution autopsy reports of sodium pentothal blood concentration levels in North Carolina defendants, some of which were low, may be helpful in determining whether sodium thiopental is appropriately administered. Dr. Heath's brief description of these report results, and their complete inapplicability to Oklahoma procedure, make them less than helpful to this Court.

**32.** *Murphy*, 124 P.3d at 1209, n. 23.

conclusion that Oklahoma's execution protocol does not violate the Eighth Amendment prohibition against cruel and unusual punishment.

¶ 11 Although this is an issue of first impression in Oklahoma, other jurisdictions have considered and rejected similar claims.[33] After a lengthy analysis the Tennessee Supreme Court concluded, "we cannot judge the lethal injection protocol based solely on speculation as to problems or mistakes that might occur. We must instead examine the lethal injection protocol as it exists today." [34] We agree. Doing so, we have found that Oklahoma's execution protocol is not cruel and unusual. We recognize that this issue is being litigated separately in the federal court system. However, Malicoat is not entitled to a stay of execution while that litigation is pending.[35] Malicoat's execution date is set for Tuesday, August 22, 2006.

¶ 12 **IT IS SO ORDERED.**

¶ 13 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 19th day of June, 2006.

/s/ Charles S. Chapel
CHARLES S. CHAPEL, Presiding Judge

/s/ Gary L. Lumpkin, CIP/DIP
GARY L. LUMPKIN, Vice Presiding Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge

/s/ Arlene Johnson
ARLENE JOHNSON, Judge

/s/ David B. Lewis
DAVID B. LEWIS, Judge

LUMPKIN, Vice–Presiding Judge, concur in Part/Dissent in part:

¶ 1 I concur in the decision to deny the request for a stay of execution and, in a proper proceeding, the finding that Oklahoma's execution protocol is constitutional. However, I disagree with the way in which this result was reached and question as to whether it is properly before the Court. Initially, I would not treat Appellant's claim as a subsequent post-conviction application. Under 22 O.S.2001, § 1089(D)(8) Appellant's claim is waived as he cannot show the claim could not have been presented to this Court previously. Failure to adhere to statutory requirements, as well as this Court's own Rules, creates inconsistency and brings into question the validity of the Court's opinions.

¶ 2 Further, I find taking the attached affidavits as evidence troublesome. Affidavits are *ex parte* supplementations of the record. This Court reviews affidavits only to determine whether the threshold showing of clear and convicting evidence as been met to warrant an evidentiary hearing. *See Bland v. State*, 2000 OK CR 11, ¶¶ 115 & 121, 4 P.3d 702, 731–32. The assertions in affidavits have not been tested in an adversary proceeding and they are not a part of the record of evidence before the Court.

¶ 3 Additionally, I find Appellant's request to be spared the imposition of his legally imposed punishment because it might cause him to suffer or experience pain unpersuasive (and rather ironic) as his murderous acts

---

**33.** *Ex Parte Aguilar*, 2006 WL 1412666, *3 (Tex.Crim.App. May 22, 2006); *Ex parte O'Brien*, 190 S.W.3d 677, (Tex.Crim.App.2006); *Bieghler v. State*, 839 N.E.2d 691, 696 (Ind.2005); *Sims v. State*, 754 So.2d 657, 668 (Fla.2000); *State v. Webb*, 750 A.2d at 455 (Conn.2000). *See also State v. Deputy*, 644 A.2d 411, 420–21 (Del.Super.1994) (discussing training of personnel and contemporary standards of decency). Federal jurisdictions which have rejected this issue include *Reid v. Johnson*, 333 F.Supp.2d 543, 551 (E.D.Va.2004). In *Boltz v. Jones*, No. 2006 WL 1495030 (10th Cir. June 1, 2006), the Tenth Circuit recently lifted a stay of execution granted in a capital case with a pending federal claim. The Tenth Circuit found that Boltz had not shown a likelihood of success on the merits of his pending claim that Oklahoma's lethal injection execution protocol was cruel and unusual.

**34.** *Abdur'Rahman*, 181 S.W.3d at 308.

**35.** The United States Supreme Court recently held that state capital prisoners may bring civil federal suits, claiming that lethal injection procedures are cruel and unusual for reasons similar to Malicoat's, under 42 U.S.C. § 1983. *Hill v. McDonough*, —— U.S. ——, 126 S.Ct. 2096, 2006 WL 1584710 (U.S. June 12, 2006). The Court expressed no opinion on the merits of the issue. However, the Court noted that a defendant filing a § 1983 suit raising this claim is not entitled to a stay of execution as a matter of course. Op. at 1238.

have been the cause of the ultimate pain and suffering for the victim and her family.