2007 OK CR 25

**Jimmy Dale BLAND, Petitioner**

v.

**STATE of Oklahoma, Respondent.**

**Nos. PCD–2007–604, D–1998–152.**

Court of Criminal Appeals of Oklahoma.

June 22, 2007.

---

David Autry, Oklahoma City, OK, attorney for petitioner.

---

W.A. Drew Edmondson, Attorney General of Oklahoma, Seth S. Branham, Assistant Attorney General, Oklahoma City, OK, attorneys for the State.

## OPINION DENYING SUBSEQUENT APPLICATION FOR POST–CONVICTION RELIEF AND EMERGENCY STAY OF EXECUTION

LUMPKIN, Presiding Judge.

¶ 1 Petitioner Jimmy Dale Bland was convicted of First Degree Malice Aforethought Murder (21 O.S.1991, § 701.7), Case No. CF-96–90, in the District Court of Tillman County. The jury found the existence of two (2) aggravating circumstances and recommended the punishment of death. The trial court sentenced accordingly. This Court affirmed the judgment and sentence in *Bland v. State*, 2000 OK CR 11, 4 P.3d 702. Petitioner's first application for post-conviction relief was denied by this Court in *Bland v. State*, Case No. PCD–1999–1200, opinion not for publication, June 26, 2000. The United States Supreme Court denied certiorari in *Bland v. Oklahoma*, 531 U.S. 1099, 121 S.Ct. 832, 148 L.Ed.2d 714 (2001). A second Application for Post–Conviction Relief was denied by this Court in an unpublished opinion on April 17, 2003, *Bland v. State*, Case No. PCD–2002–969. On April 23, 2007, the United States Supreme Court denied Petitioner's petition for writ of certiorari following the affirmance of his conviction and sentence on habeas review by the United States Court of Appeals for the Tenth Circuit. *Bland v. Sirmons*, 459 F.3d 999 (10th Cir.2006); *Bland v. Sirmons*, —— U.S. ——, 127 S.Ct. 2117, 167 L.Ed.2d 828 (2007). Upon the denial of certiorari, the State of Oklahoma requested this Court set an execution date. This Court set Petitioner's execution for June 26, 2007.

This third Application for Post–Conviction Relief was filed on June 14, 2007.

¶ 2 Pursuant to 22 O.S.Supp.2006, § 1089(C), the only issues that may be raised in an application for post-conviction relief are those that were not and could not have been raised in a direct appeal; and support a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent. This Court may not consider the merits of or grant relief based on any subsequent application for post-conviction relief unless it contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented in a previously considered application because the factual or legal basis for the claim was unavailable. 22 O.S.Supp.2006, § 1089(D)(8).

¶ 3 In his sole ground for relief, Petitioner asserts he is terminally ill with advanced lung cancer, and has at best, less than a year to live. Petitioner argues that the "evolving standards of decency which inform the Eighth Amendment and the Oklahoma Constitutional bans against cruel and unusual punishment and cruel or unusual punishment will be violated by executing a terminally ill inmate." In its response, the State asserts Petitioner's claim fails to satisfy the requirements for post-conviction review because his claim does not support a conclusion that the outcome of the trial would have been different but for the alleged errors or that he is factually innocent.

¶ 4 Attachments provided by Petitioner support his assertion concerning his current diagnosis and life expectancy.[1] These documents also show Petitioner's claim could not have been presented at the direct appeal or a previous post-conviction application. Therefore, Petitioner has met the first requirement for post-conviction review.[2]

---

1. Letter from Dr. Melody Benjamin, University of Oklahoma Health Sciences Center, Hematology/Oncology Fellow (Attachment 1) and Petitioner's medical records from the University of Oklahoma Medical Center (Attachment 2). Although Petitioner has not requested an evidentiary hearing, these *ex parte* affidavits would be insufficient evidence to warrant such a hearing.

2. The State also argues Petitioner has not satisfied this Court's Rule 9.7(G)(3) providing that

"[n]o subsequent application for post-conviction relief shall be considered by this Court unless it is filed within sixty (60) days from the date the previously unavailable legal or factual basis serving as the basis for the new issue is announced or discovered". The State argues that the "logical trigger" for starting the 60 day rule is when Petitioner himself was told by doctors of the terminal nature of his cancer. We reject this argument as we find Petitioner could not have been aware of the legal significance of his illness

¶ 5 We now must determine whether Petitioner's claim for relief supports a conclusion either that the outcome of the trial would have been different but for the errors or that Petitioner is factually innocent. Petitioner makes no claim of trial court errors or even factual innocence. Instead he argues that the Supreme Court's recently developing Eighth Amendment jurisprudence naturally extends to a constitutional prohibition against executing the terminally ill.

¶ 6 As an aid in interpreting the language in the federal constitution prohibiting "cruel and unusual punishments," the United States Supreme Court has "established the propriety and affirmed the necessity of referring to 'the evolving standards of decency that mark the progress of a maturing society' to determine which punishments are so disproportionate as to be cruel and unusual." *Roper v. Simmons,* 543 U.S. 551, 561, 125 S.Ct. 1183, 1190, 161 L.Ed.2d 1 (2005) citing *Trop v. Dulles,* 356 U.S. 86, 100–101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion).[3] The Supreme Court has used this framework of analysis to find that some classes of individuals are less culpable and therefore not deserving of the death penalty. *See Allen v. Ornoski,* 435 F.3d 946, 951 (9th Cir.2006).[4] These classes of individuals, for which execution is constitutionally prohibited, include the mentally incompetent (*Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986)); those under 16 years of age at the time of the offense (*Thompson v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988)); the mentally retarded (*Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)), and those who committed first degree murder before the age of 18 (*Roper v. Simmons,* 543 U.S. at 578, 125

S.Ct. at 1200). The Supreme Court has not included terminally ill individuals in the class for which execution is constitutionally prohibited. In the absence of any supporting authority from federal or state courts, Petitioner has not shown that "evolving standards of decency" prohibit the execution of terminally ill persons.

¶ 7 Petitioner attempts to include himself in the above list by comparing his situation to that of a mentally incompetent person. However, a review of the medical records provided by Petitioner shows he has not been found legally incompetent. Petitioner cites to an incident in early June 2007, where he became increasingly unresponsive during transport to the hospital for chemotherapy. However, the records also indicate Petitioner was ultimately revived. The records indicate possible causes for his unresponsiveness were an overdose of barbiturates or a brain seizure brought about by the cancer. However, neither conclusion mentioned Petitioner's general competence. Further, there is no indication from the medical records that the medications taken by Petitioner affect his general competence.[5] Therefore, Petitioner's claim that his execution would be the same as executing one who is mentally incompetent is unavailing.

¶ 8 In this Court's review of the Eighth and Fourteenth Amendments and corollary provisions of the Oklahoma Constitution, we have looked at "whether the punishment at issue is proportionate to the offense, offends contemporary standards of decency, and has legitimate punishment objectives". *Wood v. State,* 2007 OK CR 17, ¶ 31, 158 P.3d 467, 477–78; *Malicoat v. State,* 2006 OK CR 25, ¶ 6, 137 P.3d 1234, 1236 (citing *Roper v.*

---

to his death sentence. Accordingly, we find the attachments included by Petitioner support the claim that defense counsel learned of the terminal nature of the illness within the last 60 days. Therefore, we find Petitioner has satisfied the 60 day rule for review by this Court. Rule 9.7(G)(1)(3), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2007).

3. Personally, with all due respect, I have searched the federal constitution and fail to find this language in it. It appears to be another penumbra we are forced to navigate when applying the text of the Constitution.

4. In *Allen,* the United States Court of Appeals for the Ninth Circuit upheld the decision of the California Supreme Court that the Eighth Amendment did not prohibit the execution of an elderly and infirm prisoner.

5. Defense counsel has not provided any support for his claim that two of the medications taken by Petitioner, Lovastatin and Metformin, can cause extreme drowsiness and mental confusion.

*Simmons* as authority). Petitioner's illness does not lessen his culpability for his crime or obviate his legally imposed punishment of death. Neither does his illness lessen the retributive or deterrent purposes of the death penalty. Petitioner has not shown he is entitled to an indefinite stay of execution during his illness in order that he might die a natural death. While the current diagnosis estimates Petitioner's life expectancy at less than one year, the medical records indicate he is currently undergoing treatment which has the possibility of impacting the length of his life expectancy. To find it improper to carry out the sentence of death on a terminally ill person would mean the death sentence could not be carried out before the natural expiration of a person's life. This conclusion would clearly be against Supreme Court precedent and would forever prevent the application of a legally authorized punishment.

¶ 9 Therefore, as Petitioner has failed to show his claim supports a conclusion either that the outcome of the trial would have been different but for the errors or that he is factually innocent, and as there is no established authority from the Supreme Court or this Court supporting his claim, we find **Petitioner's Third Application for Post–Conviction Relief** and **Request for Emergency Stay of Execution are both DENIED.** While we have determined there is no legal right to stay Petitioner's execution, we find this is an issue of mercy more appropriately presented to the Governor via the Pardon and Parole Board and clemency proceedings.

¶ 10 Additionally, Petitioner has filed in his direct appeal, Case No. D–1998–152, a *Motion for Stay of Execution and to Rescind Execution Date on the Ground that as Administered, Death by Lethal Injection in Oklahoma Constitutes Cruel and Unusual Punishment in Violation of the Eight and Fourteenth Amendments and Likewise Violates the State Constitutional Proscription Against Cruel and Unusual Punishment, and Brief in Support.* In this filing, Petitioner argues the state's execution procedure creates a substantial risk that he will consciously suffer or experience excruciating pain during the execution process. Petitioner also notes that pending litigation in the federal courts challenges Oklahoma's execution protocol, and asks this Court to stay any execution date until that litigation has been resolved. Petitioner recognizes this is the same claim rejected by this Court in *Malicoat*, 2006 OK CR 25, at ¶ 11, 137 P.3d at 1239, but requests that we revisit the issue. We decline Petitioner's offer and reaffirm our finding that Oklahoma's execution protocol is not cruel and unusual. Petitioner is not entitled to a stay of execution while the federal litigation is pending and his execution date remains as June 26, 2007.

C. JOHNSON, V.P.J., and A. JOHNSON, J., specially concurring.

CHAPEL and LEWIS, JJ., dissent.

C. JOHNSON, Vice–Presiding Judge, Specially Concurring.

¶ 1 I concur in the result reached by the majority. I write separately to emphasize that Petitioner has not presented any controlling or persuasive legal precedent to support his claim that the execution of a terminally-ill prisoner constitutes cruel or unusual punishment. In my view, Petitioner's situation does not present a legal basis for invalidating his death sentence. Rather, these kinds of circumstances are more properly considered in the realm of executive clemency.

¶ 2 I am authorized to state that Judge Arlene Johnson joins in this Special Concurrence.

CHAPEL, Judge, Dissenting.

¶ 1 I dissent from the Court's refusal to stay the execution of this man, Jimmy Dale Bland, because I conclude that it violates both the United States Constitution and the Oklahoma Constitution to execute a man who is terminally ill, such that he is expected to die of natural causes within a matter of months. I conclude that it is both cruel and unusual to execute such a person and that this Court should not permit this unnecessary execution to proceed.[1]

1. *See* U.S. Const. Amend. VIII ("Excessive bail shall not be required, nor excessive fines im-

¶2 It is important to understand both what today's Court opinion is doing and what it is not doing.[2] The majority acknowledges that Bland has presented a claim that he has not and could not have previously raised, *i.e.*, that it is unconstitutional to execute a terminally ill person, and that he raised this claim in a timely manner.[3] The majority also declines to dispute Bland's factual claim that he is terminally ill and that his death is expected in less than one year (possibly much less), acknowledging that medical documents attached to Bland's emergency application "support his assertion concerning his current diagnosis and life expectancy."[4] Hence the majority recognizes the factual basis for Bland's claim and that his claim is appropriately before this Court.

¶3 Nevertheless, the majority maintains that we must evaluate Bland's claim through the lens of 22 O.S.Supp.2006, § 1089(C)(2), which permits relief only if a post-conviction applicant can establish "either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." This approach fundamentally misunderstands Bland's claim. His claim is that due to his current *status*, as a person who is terminally ill and facing death in the near future, he cannot be constitutionally executed. He is not making a claim about trial error or factual innocence. Bland cannot possibly satisfy the majority's announced standard; and he does not attempt to do so.

¶4 Yet if it violates the Federal or the Oklahoma Constitution to execute a person in Bland's condition, this Court cannot and must not allow such an execution to proceed. We cannot and must not permit the execution of persons who are mentally retarded,[5] persons who committed their crimes before they were 18 years old,[6] or persons who are legally insane or mentally incompetent.[7]

posed, nor cruel and unusual punishments inflicted."); Okla. Const. Art. II, § 9 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."). It should be noted at the outset that while the Federal Constitution proscribes punishments that are "cruel and unusual," our Oklahoma Constitution proscribes punishments that are "cruel or unusual." Since the language of our State provision is otherwise *identical* to that of the corresponding Federal provision, the use of the word "or" in our State Constitution is highly significant and implies a broader constitutional protection, prohibiting punishments that are either "cruel" *or* "unusual."

2. It is not entirely clear how the controlling opinion in today's case, authored by Judge Gary Lumpkin, should be described. Judge Charles Johnson has offered a "Specially Concurring" opinion, which under our rules denotes that the author "agrees with the rationale and result reached, but would like to add specific authority or explanation to the rationale used in the opinion." *See* Rule 3.13(B)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2007). Judge Arlene Johnson joins this "special concurrence." However, the opening line of the C. Johnson opinion states, "I concur in the result reached by the majority." Under this Court's rules this language appears to denote that this separate writing is actually a "Concur in Result" opinion, meaning that the voting judge(s) "agrees with the result reach in the majority opinion, but does not agree with the rationale used." *See* Rule 3.13(B)(3). If these two judges are not in fact joining the opinion authored by Judge Lumpkin, then that opinion is not truly a "majority Opinion" or a "Court opinion," nor does it have any precedential value, beyond deciding the current case. Nevertheless for the sake of simplicity, I refer to Judge Lumpkin's opinion as the "Court opinion" and the "majority opinion" herein.

3. *See* 22 O.S.Supp.2006, § 1089(C)(1); 22 O.S. Supp.2006, § 1089(D)(8); *see also* Rule 9.7(G)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2007).

4. According to the documents presented, Bland has advanced lung cancer, which has spread to his brain ("stage IV non-small cell carcinoma with brain metastasis"), his bones, his adrenal glands, and his spine. Bland has had both radiation therapy and chemotherapy. Nevertheless, according to Dr. Melody Benjamin, an oncologist/hematologist at the OU Health Sciences Center, "[h]is life expectancy is less than one year."

5. *See Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (prohibiting execution of mentally retarded persons).

6. *See Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (prohibiting execution of persons who committed their crime before age 18); *see also Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (prohibiting execution of persons who committed their crime before age 16) (plurality opinion).

7. *See Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (prohibiting execu-

Nor can we permit the execution of persons convicted of crimes other than murder[8] or persons convicted of felony murder, who had no knowledge or intent that someone would be killed.[9] If a death-row inmate can establish that he or she belongs within one of these *classes* of persons, that inmate cannot be constitutionally executed, regardless of whether he or she can establish any trial error (outcome-determinative or otherwise) or factual innocence of the crime.[10]

¶ 5 We can and must address Bland's claim for what it is: a claim that it is unconstitutional to execute persons who are terminally ill, whose death is medically expected to occur in less than one year's time. Neither the State nor the Court majority disputes that Bland belongs to this class of persons. Hence if such persons cannot be constitutionally executed, Bland cannot be constitutionally executed; and this Court must prohibit his execution.

¶ 6 Bland is unable to point to a Supreme Court case addressing this precise issue or even persuasive caselaw from other jurisdictions. On the other hand, neither does the State point to any cases specifically rejecting the current claim, which suggests either that the class of persons that Bland belongs to is indeed very small or that other factors (such as intervening death through natural causes) have prevented the full appellate consideration of such a claim. I suspect that both are true. At any rate, neither factor relieves this Court of its obligation to resolve this issue, on its merits, in the case now before us.

¶ 7 I conclude that it is both cruel and unusual to execute a terminally ill inmate whose death is medically expected in less than one year's time. It is "cruel" because it involves the State in an act of snuffing out the life of a person who is very ill and whose death by natural causes is imminent. Such an execution would also be "unusual," (1) because the factual coincidence of being on death row and facing *both* a fast-approaching execution date and a medical diagnosis of fast-approaching natural death is itself quite rare, and (2) because a State holding such an inmate would have good reason to delay the State-run execution and simply let nature and the inmate's Maker determine the day and manner of his/her demise.[11] I see no good reason to here invoke the State's machinery of death, with all its costs, including inevitable emotional turmoil for all those associated with it, when the goal of terminating the life of a convicted murderer is about to be accomplished without need of intervention or assistance.

¶ 8 Bland argues that executing a person in his situation is akin to executing a person who is mentally incompetent or legally insane, because the predominant justifications for capital punishment do not apply in these two situations.[12] Today's Court opinion initially mischaracterizes Bland's claim as one "that his execution would be the same as executing one who is mentally incompetent." The Court's conclusion that the record does not support this factual claim is unsurprising, but irrelevant—since Bland does not claim that he is mentally incompetent. Rather, Bland claims that the execution of persons in his situation cannot be justified by the goals of deterrence or retribution that are typically

tion of persons who are legally insane/mentally incompetent).

8. See *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (prohibiting execution for offense of rape).

9. See *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (prohibiting execution of accomplice to murder who did not kill, intend to kill, or contemplate that a killing would occur).

10. See *Roper*, 543 U.S. at 568, 125 S.Ct. at 1195 ("The death penalty may not be imposed on certain classes of offenders, such as juveniles under 16, the insane, and the mentally retarded,

no matter how heinous the crime.") (citations omitted).

11. The dearth of legal authority on the issue also supports the conclusion that it is "unusual."

12. Bland's brief states:
The only purpose that can be served by executing Mr. Bland in his condition is naked vengeance.... Just as the execution of the mentally incompetent cannot serve the ends of justice or the societal goals supposedly advanced by capital punishment, the execution of an individual whose death is imminent from terminal illness likewise would be nothing but an empty and revolting exercise.

invoked to justify capital punishment.[13]

¶ 9 The goal of specific deterrence cannot justify the execution of persons facing imminent natural death, since such persons are not realistically in a position where they would have the strength or wherewithal to again harm others—particularly since they would presumably remain "on death row" until the time of their death. Furthermore, the goal of general deterrence is not a persuasive justification for executing a terminally ill defendant. It is simply not believable that any general deterrent value that the existence of the death penalty in a particular jurisdiction might have (to prevent the commission of first-degree murder by others) could be measurably diminished by a rule that those who are convicted and sentenced to death might some day possibly avoid actual execution, if they are "lucky enough" to be diagnosed with a terminal illness, such that they are expected to die in less than one year.

¶ 10 I do not agree, however, with Bland's claim that the execution of a terminally ill person lacks retributive value; and I do not contest the Court majority's observation that contraction of a terminal illness "does not lessen [Bland's] culpability for his crime." What happens to a defendant well after his

crimes, whether he becomes mentally incompetent or terminally ill, does not change that defendant's culpability for his prior acts. Yet I simply cannot conclude that the value of pure retribution or "naked vengeance," taken upon either the mentally incompetent or the terminally ill, is consistent with our modern standards of decency, which underlie all our death penalty jurisprudence.[14] In one case the punishment makes no sense to the punished; in the other it makes no sense for the punisher.[15]

¶ 11 While today's opinion might mock the idea of "evolving standards of decency that mark the progress of a maturing society" as being the appropriate reference for determining the content of what is "cruel" and "unusual" in the Eighth Amendment context, it is indeed the proper and required measure.[16] Furthermore, it is simply unavoidable and inevitable that we turn to our societal conceptions of what is moral and appropriate to fill in the contours of constitutional terms that are as subjective and indeterminate as "cruel" and "unusual." And we are best to acknowledge openly, as the United States Supreme Court has done, that we are relying upon our judgment, not merely precedent and legal analysis, in making this determination.[17]

---

13. *See, e.g., Roper*, 543 U.S. at 571, 125 S.Ct. at 1196 (recognizing "two distinct social purposes served by the death penalty: ' "retribution and deterrence of capital crimes by prospective offenders" ' ") (citation omitted).

14. The Supreme Court acknowledged, in *Ford*, that there was "no suggestion that [the defendant] was incompetent at the time of his offense, at trial, or at sentencing." 477 U.S. at 401, 106 S.Ct. at 2597. Hence in *Ford*, as in the current case, there was no issue of a defendant's diminished culpability for the crime committed; nor was there any claim that the defendant's later-acquired status inhibited the fairness of his trial or his sentencing. In both cases the issue is whether it remains constitutional to execute the convicted defendant, despite his diminished condition at the time of the actual execution.

15. The *Ford* Court acknowledged the wide variety of justifications offered for the common-law proscription on the execution of the mentally incompetent and insane, including the words of Sir Edward Coke. Coke described the execution of a "mad man" as being "a miserable spectacle, both against Law, and of extream inhumanity

and cruelty." *See Ford*, 477 U.S. at 407, 106 S.Ct. at 2600 (quoting 3 E. Coke, Institutes 6 (6th ed. 1680)). The execution of a dying man is likewise a miserable spectacle, both inhumane and cruel.

16. *See, e.g., Roper*, 543 U.S. at 561, 125 S.Ct. at 1190 (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)); *Ford*, 477 U.S. at 406, 106 S.Ct. at 2600 (same).

17. *See, e.g., Coker*, 433 U.S. at 597, 97 S.Ct. at 2868 ("[T]he Constitution contemplates that in the end our own judgment will be brought to bear on the question of the acceptability of the death penalty under the Eighth Amendment."); *Atkins*, 536 U.S. at 312, 122 S.Ct. at 2247 (same) (citing *Coker*); *Roper*, 543 U.S. at 563, 125 S.Ct. at 1191–92 (noting Court's return to the view that "the Constitution contemplates that in the end our own judgment will be brought to bear on the question of the acceptability of the death penalty under the Eighth Amendment") (citations omitted); *see also Roper*, 543 U.S. at 590, 125 S.Ct. at 1207 (O'Connor, J., dissenting) (agreeing with Court majority on this issue and quoting same language).

¶ 12 Furthermore, this Court should not wait to be told by the United States Supreme Court whether or not it is constitutionally acceptable to execute the terminally ill.[18] If this Court's members conclude, by exercising our own judgment, that it is not constitutionally permissible to execute the terminally ill, we should not decline to reach this conclusion in the current case—particularly since our State Constitution's protection against "cruel or unusual punishments" is arguably more expansive than the Eighth Amendment anyway.[19] This Court repeatedly rejected claims that it was unconstitutional to execute the mentally retarded, . . . until the Supreme Court decided *Atkins* in 2002. This Court also rejected claims that it was unconstitutional to execute persons who were under age 18 at the time of their crimes, . . . until the Supreme Court decided *Roper* in 2005. Hence this Court allowed executions to proceed that are now considered clearly unconstitutional. And there is no remedy for these wrongs.[20] We should not do the same thing in the current case.

¶ 13 Bland's life is very near its natural end. It is cruel, unusual, inappropriate, and totally unnecessary to intervene at this time, just to ensure that his demise is at the hands of the State. The Supreme Court has recognized that the Eighth Amendment's prohibition of "cruel and unusual punishments" includes within its domain the protection of "the dignity of society itself from the barbarity of exacting mindless vengeance."[21] We should uphold this fundamental Eighth Amendment and Oklahoma constitutional value in the current case. I would grant Bland's Application for Post–Conviction Relief and issue a Stay of his Execution. I am authorized to state that Judge David Lewis joins this opinion.[22]

---

**18.** The majority opinion relies upon the absence of authority on this issue to reject Bland's constitutional claim.

**19.** *See* note 1 *supra.*

**20.** *See, e.g., Woodson v. North Carolina,* 428 U.S. 280, 287, 96 S.Ct. 2978, 2983, 49 L.Ed.2d 944 (1976) (discussing "the unique and irreversible penalty of death").

**21.** *See Ford,* 477 U.S. at 410, 106 S.Ct. at 2602.

**22.** Regarding the majority opinion's suggestion that Bland's claim is most appropriately present-ed to the pardon and parole board, as an issue for executive clemency, two things are worth noting. One, the pardon and parole board has already rejected Bland's claim, 5–0. Two, as the Supreme Court held in *Ford,* if the Eighth Amendment proscribes the execution of an entire class of persons due to their status (as legally insane or otherwise inappropriate for execution), the execution of individual members of this class cannot be left to the discretion of the executive branch. *See Ford,* 477 U.S. at 409–10, 106 S.Ct. at 2602 ("Faced with such widespread evidence of a restriction upon sovereign power, this Court is compelled to conclude that the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.").